# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**Patricia Ray,**

      **Plaintiff,**

      Case No.: 2:08-cv-1086
      Judge Smith
**-V-**       Magistrate Judge King

**The Franklin County**
**Board of Elections,** *et al.*,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order (Doc. 7).[1] Defendants Secretary of State Jennifer Brunner and The Franklin County Board of Elections have filed their responses (Docs. 8 and 9). The Court held oral argument on Plaintiff's Motion on November 17, 2008. For the reasons that follow, Plaintiff's Motion for Temporary Restraining Order and Preliminary and Permanent Injunction is **GRANTED**.

**I. BACKGROUND**

Plaintiff Patricia Ray initiated this case on November 15, 2008, asserting violations under the Americans with Disabilities Act ("ADA"), the Help America Vote Act ("HAVA"), and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff voted by absentee ballot in the

---

[1] Plaintiff initially only sought a temporary restraining order, however, considering the time sensitive nature of the issues raised in this case, the fact that the motion and memorandums in opposition address all the legal issues in the case, and there are no triable issues of fact remaining, the Court will consider the motion as one seeking both a preliminary and permanent injunction. *See United States v. McGee*, 714 F.2d 607, 613 (6th Cir. 1983) ("Where there are no triable issues of fact remaining to be resolved, the Court may properly convert a preliminary injunction to a permanent injunction without an evidentiary hearing.").

general election that was held on November 4, 2008. Plaintiff was notified on November 11, 2008 via telephone by the Franklin County Board of Elections that she had to come to the Board of Elections by November 14, 2008 to cure problems in her absentee ballot. (See Ray Aff. ¶ 8). She was further informed that if she did not correct the problem by November 14, 2008, her vote would not be counted.

Plaintiff has diabetes, suffers from panic attacks, is bed-ridden. She cannot leave her home and cannot go to the Franklin County Board of Elections. Plaintiff is disabled as defined in the ADA, is homebound, and is physically unable to come to the Board of Elections by November 14, 2008. The Franklin County Board of Elections has stated that it will not send a representative to the houses of disabled persons to permit them, including Plaintiff, to cure their absentee ballots. Defendant Secretary of State Jennifer Brunner has refused to require Defendant Franklin County Board of Elections to have its representatives go to the houses of bed-ridden persons to cure absentee ballots.

Plaintiff, bringing this suit on behalf of herself and other disabled persons[2] in Franklin County, asserts that she will be denied the same opportunity to participate in the voting process as other non-disabled persons. Plaintiff asserts that she will suffer irreparable harm if the relief sought is not granted. Plaintiff specifically seeks a temporary restraining order and preliminary and permanent injunction enjoining Defendants from requiring Plaintiff and other disabled persons to cure the deficiencies in their absentee ballots by November 14, 2008 and requiring

---

[2] Plaintiff's counsel represented to the Court during oral argument on November 17, 2008, that 27 total individuals have been identified who are homebound and cannot physically go to the Franklin County Board of Elections to correct the deficiency in their absentee ballots. It is unknown whether all of these individuals are disabled as defined by the ADA.

Defendant Franklin County Board of Elections to go to the homes of Plaintiffs and all other disabled persons who are prevented from curing their absentee ballots.

## II.  STANDARD OF REVIEW

Plaintiff moves this Court for a temporary restraining order and preliminary and permanent injunction pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. Rule 65(b) permits a party to seek injunctive relief to prevent immediate and irreparable injury. A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo. The factors considered in granting a temporary restraining order or a preliminary injunction are similar in nature. In the Sixth Circuit, it is well-settled that the following factors are to be considered in determining whether a temporary restraining order is necessary:

> (1) Whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) Whether the movant has shown irreparable injury; (3) Whether the issuance of a preliminary injunction [TRO] would cause substantial harm to others; and (4) Whether the public interest would be served by granting injunctive relief.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (*citing McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir. 1997) ( *en banc* ), *quoting Sandison v. Michigan High Sch. Athletic Ass'n,* 64 F.3d 1026, 1030 (6th Cir.1995)). These four considerations are not required elements of a conjunctive test but are rather factors to be balanced. *Michigan Bell Tel. Co. v. Engler,* 257 F.3d 587, 592 (6th Cir. 2001) (no single factor is determinative.); *Monongahela Power Co. v. Schriber,* 322 F.Supp.2d 902, 918 (S.D. Ohio 2004).

The decision whether or not to issue a preliminary injunction falls within the sound discretion of the district court. *See Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). "The purpose of a preliminary injunction is always to prevent

irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 348 (6th Cir. 1998) (*citing Stenberg v. Checker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

After considering the parties arguments and reviewing the applicable law, the Court finds that it is likely that Plaintiff will prevail on the merits of her ADA claim.[3]

Plaintiff contends that Defendants have failed to provide reasonable modifications in their policies such that she has been discriminated against on the basis of her disability in violation of The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Specifically, Plaintiff argues that Directive 2008-109's in-person requirement discriminates against homebound disabled voters by denying this class of individuals the same opportunity to cure deficiencies in their absentee ballots, thereby denying homebound disabled voters an equal opportunity to have their vote counted.

Defendant Secretary of State Jennifer Brunner issued Directive 2008-109 on November 3, 2008.[4] Directive 2008-109 provides in pertinent part:

---

[3] As set forth above, Plaintiff also asserts violations of The Help America Vote Act of 2002 ("HAVA"), 42 U.S.C. § 15301 *et seq.*, and The Equal Protection Clause of the Fourteenth Amendment. Because the Court is persuaded by Plaintiff's ADA claim, the Court declines at this time to address Plaintiff's HAVA and Fourteenth Amendment claims.

[4] The Court questions whether Secretary of State Directive 2008-109 contradicts Ohio Revised Code Section 3509.07, however, that issue is not before this Court. Rather, Directive 2008-109 remains in effect, and therefore, this Court must construe it as referenced by the parties

-4-

The purpose of this directive is to provide a uniform process by which absentee voters may be given notice that additional information is required to effectuate their vote on an absent voter's ballot. **This directive applies to when a voter is otherwise eligible, but for deficiencies regarding an absent voter's ballot envelope that may be corrected by the voter appearing in person at the board of elections. In this case, such a voter must be notified as is provided in this directive to permit him or her to timely correct such errors so that the absent voter's ballot may be counted in the official canvass of the election. This will also allow the board of elections to detect irregularities that may be associated with absentee voting or that require further investigation to protect the integrity of the voting process.**

Accordingly, I hereby direct all county boards of elections to notify absentee voters of the presence of any deficiency regarding their absent voter's ballot ID envelope that hinders the ballot contained within from being counted, when the voter is otherwise eligible to vote. Once notified, these **absentee voters must be given the opportunity to correct any omission or error regarding their absent voter's ballot ID envelope through the tenth day after the election.**

Many boards of elections have adopted policies to allow absentee voters an opportunity to correct errors on their absentee ballot ID envelope by the close of the polls on Election Day. However, under R.C. 3509.05, absentee ballots postmarked by November 3, 2008 (or on the day of the election for overseas voters) will be counted in the official canvass so long as they are received within ten days of the election. When practicable, given that some absent voter's ballots may not be received until ten days after the election, boards must make every effort to allow affected voters the opportunity to correct deficiencies regarding their ID envelopes through the close of business on November 14, 2008.

Under R.C. 3509.07, boards of elections may reject ballots contained within absentee ballot ID envelopes that are insufficient. As discussed in Directive 2008-82, an absentee ballot ID envelope must contain the following minimum required information:

- the voter's name
- the voter's signature
- acceptable identification required for an absent voter's ballot.

---

in this case. Notably, during oral argument, counsel for Defendant Franklin County Board of Elections stated that Directive 2008-109 may not comply with a literal interpretation of Ohio Revised Code Section 3509.07.

R.C. 3509.07 provides as follows:

> "If election officials find that the statement accompanying an absent voter's ballot or absent voter's presidential ballot is insufficient, that the signatures do not correspond with the person's registration signature, that the applicant is not a qualified elector in the precinct, that the ballot envelope contains more than one ballot of any one kind, or any voted ballot that the elector is not entitled to vote, that Stub A is detached from the absent voter's ballot or absent voter's presidential ballot, or that the elector has not included with the elector's ballot any identification required under section 3509.05 or 3511.09 of the Revised Code, the voter shall not be accepted or counted.

Under this law, even if the minimum required information has been provided, additional information may be necessary in order for a board of elections to reasonably verify the identify and eligibility of a voter in order to count his or her absent voter's ballot. In both cases, where either the minimum required information is missing, or where additional information may be necessary to reasonably verify the identity and eligibility of a voter, **a notice must be sent to such voter within six (6) days after the election, which this year is no later than November 10, 2008.**

An absent voter's ballot ID envelope may be deficient and susceptible to correction and the above required notice in the following situations:

- when the ID envelope does not contain the minimum required information (name, signature or acceptable ID);
- when the ID envelope contains the minimum required information but other information is necessary for the board to reasonably verify the identity and eligibility of the voter;
- when the ID and envelope is not sealed.

In order to inform affected voters of the opportunity to correct deficiencies associated with their absent voter's ballot ID envelopes, error notifications must be reasonably calculated to reach the affected voter in time to allow them to act. Whenever possible, notice of deficiencies associated with an absent voter's ballot ID envelope should be sent by postcard or letter using first class, not bulk, postage. However, when an ID envelope containing deficiencies that prevent the ballot contained in it from being counted is received at a point when postal notice would be ineffective, boards should sen notice via email if an email address is known. When an email address is known, boards are advised to simultaneously

> use both email and first class mail notification methods to notify the voter. Boards should consider using telephone notification as a last resort when all other means of communication have failed, or are impracticable or impossible.
>
> Because absentee ballot ID envelopes are signed by the voter under penalty of election falsification, the notification must instruct affected voters to physically appear at the office of the board of elections to correct deficiencies associated with their ID envelope, in addition to informing the voter of the nature of the ID envelope error.
>
>                                  \*      \*      \*

(Emphasis in original).

Defendant FCBOE primarily argues that Plaintiff cannot succeed on the merits because she was not denied the right or opportunity to vote, but instead was afforded the opportunity to vote via absentee ballot, and that her subsequent failure to provide the required identification cannot be construed as a denial of Plaintiff's right to vote. (Def. FCBOE's Memo. in Opp. at 2-3). In addition, Defendant FCBOE asserts that Plaintiff's claim is barred by laches because she unreasonably delayed the filing of her claim. (*Id*. at 7-8).

Defendant Brunner contends that Directive 2008-109's in-person requirement is reasonable "given the manpower and time restraints under which the boards find themselves" and that requiring her to send out two employees for the purpose of allowing a disabled voter to correct a deficiency "may make it impossible for boards to carry out all of their other obligations that must be completed between now and the certification of the ballot results." (Def. Brunner's Memo. in Opp. at 5). In addition, like Defendant FCBOE, Defendant Brunner argues that Plaintiff's motion for an injunction should be refused because it was filed too late. (*Id*. at 6-7).

Title II of the ADA provides that "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendants do not dispute that Plaintiff is a "qualified individual with a disability" or that Defendants are "public entities." The ADA requires reasonable modifications to accommodate qualified individuals with disabilities unless the public entity can demonstrate that such modification would entail an undue burden or fundamental alteration:

> (b)
>
>        \*  \*  \*
>
> (7) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.
>
> (8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.
>
>        \*  \*  \*

28 C.F.R. § 35.130(b)(7)-(8).

Defendant FCBOE correctly points out that Plaintiff was provided an opportunity to vote with an absentee ballot, that O.R.C. § 3509.07 requires that certain identification information must be provided, and that if there is a failure to provide such information, "the vote shall not be accepted or counted." Thus, if Directive 2008-109 did not alter or modify O.R.C. § 3509.07, even though Plaintiff's ballot would not be counted, Plaintiff would have no ADA claim because all voters who cast absentee ballots with deficiencies would be treated equally, and thus, homebound individuals with disabilities would not be discriminated against.

Directive 2008-109 did, however, alter O.R.C. § 3509.07's mandate that deficient ballots not be accepted or counted by providing for a "process" by which the absentee voters be given notice of the deficiencies and an opportunity to correct such deficiencies by appearing in-person at a board of elections to make the necessary corrections. If the elector appears in-person at the board of elections and makes the necessary corrections, "the board is required to count that absent voter's ballot during the official canvass of election returns." (Directive 2008-109 at 3). If Defendants fail to make a modification to the in-person eligibility criteria outlined in Directive 2008-109, Plaintiff, solely by reason of her disability, will be denied the opportunity cure any defects. Ultimately, Plaintiff will be excluded from participating in the election because of her disability while others who are similarly situated, but not homebound and disabled, will not.

As set forth above, unlike Defendant FCBOE, Defendant Brunner does not argue that individuals like Plaintiff are not discriminated against, but instead asserts that Directive 2008-109's in-person requirement is reasonable given manpower and time restraints and that Plaintiff's suggested modification of sending out two FCBOE employees to the homes of individuals like Plaintiff could make it impossible for boards to carry out all of their other obligations. (Def. Brunner's Memo. in Opp. at 5). The Court finds that these bald assertions alone, however, do not suffice to meet Defendants' burden of demonstrating that modification would entail an undue burden or fundamental alteration. At the hearing on Plaintiff's Motion, Plaintiff represented that there are at least 27 individuals who are homebound and cannot travel to the Board of Elections to correct the insufficiencies in their absentee ballots. Mr. Michael Stinziano, Director of the Franklin County Board of Elections stated that sending employees from the Board of Elections to Plaintiff's home and others would not be a problem as long as

they have sufficient notice.  He further stated that he was aware that at least one other County Board of Elections was making such accommodations.  Further, at the hearing, Plaintiff identified other methods for accommodation, such as permitting family members appointed by homebound individuals with disabilities to pick up the defective ballot from the Board of Elections and deliver the corrected ballot for the disabled individual.  Such an accommodation would not create a drain on the boards of elections' manpower, and Defendants failed to offer any evidence that permitting such modification would entail an undue burden or fundamental alteration.  Accordingly, the Court rejects Defendant Brunner's assertion that modifying Directive 2008-109's in-person requirement to accommodate homebound individuals with disabilities would entail an undue burden.

The Court also rejects Defendants' contention that Plaintiff's motion should be denied because she filed too late.  Defendant FCBOE argues that Plaintiff's claim is barred by laches. (Def. FCBOE's Memo. in Opp. at 7-8).  The doctrine of laches bars a claim where there is "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 287 (1961) (citations omitted). In the instant case, neither element is met.  Defendant Brunner notes "Directive 2008-109 was issued on November 3, 2008 and Plaintiff did not file this action until November 15, 2008." (Def. Brunner's Memo. in Opp. at 6).  Plaintiff, however, was not advised that there was a problem with her absentee ballot until November 11, 2008.  Further, although Defendant Brunner states, that the "potential disruption to the official canvasss [sic] and certification of results caused by the late filing of this case will be extraordinary," (*Id*. at 7), she fails to provide adequate evidentiary support for this assertion.  Similarly, Defendant FCBOE asserts that the

relief sought would compromise Defendant's "ability to administer and enforce Ohio election laws" (Def. FCBOE's Memo. in Opp. at 8), but Defendant fails to provide adequate evidentiary support for this assertion.

### B.     Irreparable harm

Having demonstrated a likelihood of success on the merits, the Court also finds that Plaintiff will suffer irreparable harm if injunctive relief is not granted.  This matter must be resolved quickly as the County Boards of Elections must complete their canvass no later than Tuesday, November 25, 2008.  (See Defendants' oral argument).  Plaintiff will loose the right to have her vote counted unless the Court grants immediate injunctive relief.  The Supreme Court has held that "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined."  *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).  Therefore, Plaintiff has demonstrated sufficient irreparable harm to justify the issuance of injunctive relief.

### C.     Harm to others

Plaintiff asserts and the Court agrees that there will be no substantial harm to others by allowing Plaintiff and other disabled people the right to have their votes counted.

### D.     Public interest

The Court finds that in this case the public interest is best served by granting the injunctive relief sought.

Examining the four preliminary and permanent injunction factors together, the Court concludes that the issuance of a preliminary and permanent injunction is necessary in this case.

IV. **CONCLUSION**

Based on the aforementioned, Plaintiff's Motion for a Temporary Restraining Order and Preliminary and Permanent Injunction is **GRANTED**. Plaintiff and other disabled persons who are confined to their homes and cannot travel to their respective County Board of Elections to correct the deficiencies in their absentee ballots, shall be given reasonable accommodations to do so. One example of a reasonable accommodation is for two employees of the Board of Elections (one Republican and one Democrat) to go to the homes of Plaintiff and other homebound, disabled persons to provide them with their absentee ballot to correct the error or deficiency. If that alternative is not practical, another alternative may be to allow an appointed family member or an individual's attorney to pick up the deficient absentee ballot from the Board of Elections, take it to Plaintiff and other homebound, disabled persons to allow them to correct the deficiency, and then return the absentee ballot the Board of Elections. Plaintiff and other homebound, disabled persons must notify their respective County Board of Elections to request such accommodation as soon as possible and such accommodation must be completed by the close of business Friday, November 21, 2008. This Order applies to all 88 County Boards of Elections in Ohio.

The Clerk shall remove Document 7 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**